IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MONICA BURNS,                    §
                                 §
        Plaintiff,               §
                                 §        CIVIL ACTION NO. H-05-2157
v.                               §
                                 §
AIR LIQUIDE AMERICA, L.P.,       §
                                 §
        Defendant.               §

MEMORANDUM AND ORDER

Pending is Defendant Air Liquide America, L.P.'s Motion for
Complete Summary Judgment (Document No. 35).  After carefully
considering the motion, response, reply, and the applicable law,
the Court concludes as follows:

I.  Background

The background of this suit and the identities of the parties
may be found in the Court's Memorandum and Order dated February 8,
2006.  Plaintiff Monica Burns ("Plaintiff") is a 52-year-old female
who alleges that her former employer, Defendant Air Liquide
America, L.P. ("Defendant"), discriminated against her on the basis
of age and disability in violation of the Age Discrimination in
Employment Act ("ADEA") and the Americans with Disabilities Act
("ADA"), respectively.  Plaintiff also alleges that Defendant
unlawfully retaliated against her for filing a charge of
discrimination with the Equal Employment Opportunity Commission

("EEOC"), and violated the Equal Pay Act ("EPA") by denying her equal pay for equal work because of her sex.   Plaintiff was ultimately terminated in 2004, for the stated cause of violating the company's vehicle policy and for having a prior, poor driving record.   Plaintiff contends that, in reality, she was fired because of her age and disability and in retaliation for her complaints of discrimination.

Plaintiff worked for Defendant and its predecessor corporation for over 15 years.   At the time period relevant to this case, Plaintiff worked as an account manager selling cylinder gases.   *See* Document No. 35 ex. C at 139.   As an account manager, Plaintiff was assigned a geographic area and customer base.   Among other things, Plaintiff was responsible for selling to her accounts, growing her sales territory, and offering new services and product lines to her customers.   *See* id. at 139-40.   The uncontroverted summary judgment evidence is that Plaintiff was recognized for her sales performance over the years.   For instance, she was listed on Defendant's "Top Ten" national sales list for five consecutive years between 1999 and 2004, and she received several merit-based salary increases.

In January, 2003, Rachelle Goebel ("Goebel"), a 31-year-old woman, began supervising Plaintiff's department as the new Sales Manager for the Central Gulf Coast Region.   Plaintiff presents summary judgment evidence that at the time Goebel became supervisor, eight cylinder account managers in Plaintiff's

2

department reported to Goebel, five of whom over 40-years-old.  *See* Document No. 41 ex. A ¶ 13.[1]  Plaintiff alleges that, almost immediately upon Goebel's arrival, Goebel began a campaign of discrimination against Plaintiff, which ultimately resulted in Plaintiff's termination.  Plaintiff contends that Goebel, among other things: reassigned Plaintiff's most active and profitable sales accounts to her younger co-workers; treated younger employees more favorably than Plaintiff when they failed to meet sales goals, such as lowering their sales goals and failing to discipline them for meeting even the lowered goals, while Plaintiff was placed on an "action plan" for her alleged deficiencies; inaccurately reported Plaintiff's sales quotas and earnings and denied Plaintiff proper credit for her sales; failed to offer managerial support to Plaintiff but provided support to younger employees; repeatedly failed to attend Plaintiff's weekly "action plan" meetings; and discriminated against Puma, who was older than Plaintiff and who suffered from a disability, until he was forced to retire.

In March, 2003, Goebel issued Plaintiff a verbal warning for the "verbally abusive manner" Plaintiff "used to address fellow employees."  *See* Document No. 35 ex. D.  In November, 2003, Goebel

---

[1] Goebel avers in her declaration that, in 2003 and 2004, *all* of the account managers that reported to her were older than forty.  *See* Document No. 35 ex. Y ¶ 4.  It is uncontroverted, however, that Plaintiff was the third-oldest person in the department, behind 57-year-old Larry Puma ("Puma") and Brian Davies ("Davies").  Davies transferred from Goebel's supervision shortly after she arrived.

held an informal "3rd Quarter Discussion" with Plaintiff and addressed some performance concerns, including that "[m]any of [Plaintiff's] customers [were] down over 2002," Plaintiff had signed only "existing business [o]r small customers" in 2003, and Plaintiff's "[c]alendar doesn't have enough appointments." *See* id. ex. E.  On January 8, 2004, Goebel issued Plaintiff a written Disciplinary Warning Report for "Unsatisfactory Performance" and assigned Plaintiff a 30-day corrective action plan. *See* id. ex. F.[2] The report stated that, although Plaintiff had "signed a great deal of cylinder contracts in 2003," Plaintiff fell short of reaching her sales target through November, 2003; failed actively to call on new prospects; and often failed to submit sales information properly, causing duplicate work for others.  *See* id. ex. F at 1, 3.  Plaintiff's corrective action plan included nine items to be completed over the next 30 days, such as signing "one new cylinder contract with new business valuing a minimum of $36,000/year," gaining "solid prospects" that could close in 2004, making an average of four sales calls per day, and accurately submitting all paperwork.  Id. at 5.

On January, 13, 2004, Plaintiff filed a charge of discrimination against Defendant with the EEOC, alleging age

---

[2] It is uncontroverted that, in 2003 and 2004, Goebel issued disciplinary warning reports to two other account managers in Plaintiff's department--both of whom were over 40 years old.  In early 2004, Goebel terminated one of the account managers, and the other account manager resigned.

discrimination.  *See* Document No. 40 ex. A-10.  The uncontroverted evidence is that, around that same time, Plaintiff contacted Human Resources to report concerns that her sales numbers were inaccurate and to request a transfer from Goebel's department.  *See* id. ex. A-11; Document No. 41 ex. A ¶ 31.  On January 22, 2004, Plaintiff, "at [her] physician's insistence," applied for (and was later approved for) short-term disability related to "severe stress" from her work environment, anxiety, depression, and insomnia.  *See* id. ex. A ¶ 33 & ex. A-1.  Plaintiff took disability leave from January 22, 2004, through the end of February, 2004, and she amended her EEOC charge to include an allegation of disability discrimination. While Plaintiff was out on medical leave, Goebel revised the sales territories and reassigned the account managers' sales accounts, including Plaintiff's.  *See* id. ex. A ¶¶ 35-36; Document No. 40 ex. C at 104-05; Document No. 35 ex. Y ¶ 7.[3]

Plaintiff returned to work on or about March 1, 2004.  The uncontroverted summary judgment evidence is that on Plaintiff's first day back to work, she was called into a meeting with Goebel,

---

[3] Goebel testified at her deposition that she knew that Plaintiff was on medical leave for "stress-related issues," and she learned that Plaintiff had "filed a charge of discrimination naming [Goebel] as the discriminator" while Plaintiff was out on medical leave.  *See* Document No. 40 ex. C at 75, 78, 86-87.  Goebel averred in her declaration or testified in her deposition that she revised and realigned the sales territories because they were not "geographically desirable" and "account managers were spread out . . . all over Houston."  *See* id. ex. C at 104; Document No. 35 ex. Y ¶ 7.  She averred that she was prompted to act "in part" because one account manager resigned and one was terminated in early 2004.

Goebel's new supervisor Kevin McKean ("McKean"), and a Human Resources representative, Chris Orsak ("Orsak"). Plaintiff avers that she learned at the meeting that her job was jeopardy, her sales territory and goals had been altered, and her corrective action plan would resume. *See* Document No. 40 ex. A ¶ 37. On April 6th, McKean and Orsak met with Plaintiff to discuss performance issues and McKean's "concern that [Plaintiff was] not going to meet [her] outlined goals." *See* id. ¶ 40; Document No. No. 35 ex. I at 1. Plaintiff was given another 30 days to meet the stated goals. On April 19th, Plaintiff amended her EEOC charge to include a charge of retaliation. *See* Document No. 41 ex. A-16.

On May 1, 2004, while Plaintiff was away from home, Plaintiff's 17-year-old daughter took Plaintiff's keys, drove Plaintiff's company car, and had an accident when the car hydroplaned and struck a large wooden fence post, rendering the vehicle "not drivable." *See* Document No. 35 ex. Q & ex. U ¶ 4. It is undisputed that this conduct violated Defendant's Code of Conduct governing company vehicle usage (which Plaintiff had signed in March, 2004). The policy provides in part:

> Family members below the age of 21 are not authorized to drive company vehicles, but on an exception basis the employee's spouse, or children over 21, may perform errand-type services for the employee, such as repair or maintenance trips to the garage or employee pick up at airport, etc. Other relatives or friends may not drive company vehicles.

*See* id. ex. S at 2 ¶ 2.6.1.2.  On May 7, 2004, Defendant terminated Plaintiff's employment, allegedly for the "sole reason" that she violated the company vehicle policy and maintained a prior, poor driving record.[4]

Ten months after her discharge, Plaintiff was issued a right-to-sue letter by the EEOC, and she timely filed this action, alleging age and disability discrimination, unlawful retaliation, and a violation of the EPA.  Plaintiff seeks declaratory and injunctive relief, reinstatement, back pay and front pay, compensatory and punitive damages, pre- and post-judgment interest, and attorneys' fees and costs.

Defendant now moves for summary judgment on all of Plaintiff's claims, asserting that: (1) Plaintiff failed to exhaust her administrative remedies with respect to her discriminatory termination claim because she did not include her termination in her EEOC charge or amend her charge after she was terminated; (2) Plaintiff's age and disability discrimination claims fail because the remainder of the actions about which Plaintiff complains do not constitute "adverse employment actions";

---

[4] Defendant presents evidence that, including the incident with her daughter, Plaintiff had blemished her driving record on six occasions between 1995 and 2004.  Document No. 35 exs. L-Q. Plaintiff testified that at one point, after an accident in 1997, Defendant "recommended" that Plaintiff "use [her] own vehicle for a while."  Id. ex. C at 112.  Defendant deemed half of Plaintiff's accidents and property damage to her company vehicle "preventable," including the event with her daughter and two incidents when Plaintiff rear-ended other vehicles.  Id. exs. N-O, Q.

7

(3) Plaintiff cannot establish a prima facie case of age discrimination or rebut Defendant's legitimate, non-discriminatory reason for terminating her; (4) Plaintiff cannot establish a prima facie case of disability discrimination because she cannot show that she was disabled, regarded as disabled, or had a record of being disabled; (5) Plaintiff cannot establish a prima facie case of retaliation because no causal link exists between her protected activity and her termination; and (6) Plaintiff fails to establish a prima facie case under the EPA.

## II.   Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   The moving party must "demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).   A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in

a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.   Id.   "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."   Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."   Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).   All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).   "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.   Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).   On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."   Id.   Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."   Anderson, 106 S. Ct. at 2513.

III.   <u>Discussion</u>

A.   <u>Exhaustion of Administrative Remedies</u>

Defendant contends that Plaintiff's discrimination claims related to her termination are beyond the scope of her EEOC charge and are therefore barred for failure to exhaust administrative remedies.   Before pursuing claims in federal court, employment discrimination plaintiffs must exhaust their administrative remedies by filing a charge of discrimination with the EEOC.  *See* <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378-79 (5th Cir. 2002); *see also* <u>Pacheco v. Mineta</u>, 448 F.3d 783, 788 (5th Cir.), *cert. denied*, 127 S. Ct. 299 (2006).   "[T]he scope of an EEOC complaint should not be strictly interpreted."   <u>Preston v. Good Nature Café</u>, 33 Fed. Appx. 704, at *1 (5th Cir. Mar. 1, 2002) (unpublished) (citing <u>Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 465 (5th Cir. 1970)).   Instead, "a judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the [EEOC].'"   <u>Sanchez</u>, 431 F.2d at 466 (quoting <u>King v. Georgia Power Co.</u>, 295 F. Supp. 943, 947 (D.C. Ga. 1968)); *see also* <u>Nat'l Ass'n of Gov't Employees v. City Publ'n Serv. Bd.</u>, 40 F.3d 698, 711 (5th Cir. 1994).

10

Here, Plaintiff filed her initial EEOC charge of age discrimination on January 13, 2004. *See* Document No. 40 ex. A-10. A little over three weeks later she amended the charge to include a complaint of disability discrimination. *See* id. ex. A-12. She again amended the charge on April 19, 2004, to include a retaliation claim and to expand the allegations related to the discrimination charges. *See* id. ex. A-16. On May 7, 2004, soon after Plaintiff's case was lodged in the EEOC for investigation, Defendant terminated Plaintiff's employment. It is uncontroverted that Plaintiff failed to amend her charge after her termination. In March, 2005, over ten months after Plaintiff's termination, the EEOC issued Plaintiff a right-to-sue letter. Document No. 1 ex. B.

The issue is whether Plaintiff's termination claim is within "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *See* Pacheco, 448 F.3d at 789 (quoting Sanchez 431 F.2d at 466). The Court considers Plaintiff's latest charge (the Second Amended Charge) filed on April 19, 2004, fewer than three weeks before her termination. Plaintiff checked three boxes on the form for discrimination: age, disability, and retaliation. *See* Document No. 40 ex. A-16. Plaintiff alleged that she had suffered discrimination since February, 2003, with numerous items mentioned up and into April, 2004, and she also checked the box for "Continuing Action." In the factual narrative of the Charge,

11

Plaintiff detailed on two pages multiple incidents of discrimination and/or retaliation in nine separately-numbered paragraphs. Among other things, Plaintiff charged her new Sales Manager Rachelle Goebel, a younger woman not in the protected class, with "specific acts of discrimination [that] *include, but are not limited to*, reassigning my accounts to younger co-workers, refusing to review or approve contracts submitted, failing to report or falsifying the number of SIP points I have earned and denuding my territories and accounts." *See* id. at 1 (emphasis added). She summarized that after 16 years of successful employment by Defendant, her "new Sales Manager, Rachelle Goebel, . . . has discriminated against, harassed and undermined me in the performance of my sales position, to the extent that I have suffered losses of income, sales ranking and performance ratings, injuring my reputation within the company and *threatening my continued employment*." *See* id. (emphasis added). On May 7, 2004, Plaintiff was in fact terminated.

The Fifth Circuit observed a generation ago that "the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970). Thus, the court observed, "it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation." Id. Therefore, the

court held, "it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." _Id._  The _Sanchez_ rule adopted in 1970 is still the Fifth Circuit's standard for analyzing whether one has exhausted her administrative remedies. *See, e.g.,* Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006):

> [T]his court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.' *Sanchez*, 431 F.2d at 466.

Here, it is inconceivable that an EEOC investigation into Plaintiff's April 19, 2004, charges of age and disability discrimination "threatening my continued employment" would not have included inquiry into Plaintiff's actual termination only 18 days later and nearly a year *before* a right-to-sue letter was issued. *See* Sanchez, 431 F.2d at 466 ("[A] judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the [EEOC].'") (quoting King v. Georgia Power Co., 295 F. Supp. 943, 947 (N.D. Ga. 1968); Preston, 33 Fed. Appx. 704, at *1 ("[I]t is possible that [plaintiff]'s initial allegations of racial discrimination would have lead to an EEOC investigation of

13

[defendant]'s potentially discriminatory employment practices[,] [including plaintiff's] claims of racially discriminatory termination," which were not specifically pled in EEOC charge).[5] Accordingly, Plaintiff exhausted her administrative remedies with respect to her claim in this suit that Defendant's age and disability discrimination ultimately did result in her termination.

B.   Age Discrimination

Plaintiff has presented summary judgment evidence that, prior to her termination in 2004, she was listed on Defendant's "Top Ten" national sales list for five consecutive years between 1999 and 2004; she received annual merit raises from 1999-2003; she received good performance evaluations from her supervisors between 1998 to 2002, until Goebel became Plaintiff's supervisor in 2003; and even after Goebel came on board, Plaintiff was recognized by higher

---

[5] This case is therefore distinguishable from cases relied upon by Defendant, Foster v. Tex. Health Sys., No. 3:99-CV-1217-L, 2002 WL 1461737 (N.D. Tex. June 30, 2002), and Ocampo v. Lab. Corp. of Am., SA04CA538-FB, 2005 WL 2708790 (W.D. Tex. Sept. 6, 2005), where the plaintiffs were terminated after the EEOC *completed its investigation and issued right-to-sue letters*, and the plaintiffs failed thereafter to file new or amended charges to address the termination. There, because the "termination occurred *after* [plaintiff]'s initial charge and the issuance of the right-to-sue letter, the EEOC could not possibly have investigated a charge of discrimination or retaliation based on events that had not occurred and for which no charge was ever filed." Foster, 2002 WL 1461737, at *6 (emphasis added); *see also* Ocampo, 2005 WL 2708790, at *7.

14

management for her high rankings and performance.  *See* Document No.
41 ex. A ¶¶ 7-11 & exs. A-2, A-3, A-4.   Plaintiff has also
presented summary judgment evidence that in the 16 months after the
31-year-old Goebel became Sales Manager of Plaintiff's department,
Goebel (1) reassigned the oldest employees' most active and
profitable sales accounts and territories to younger employees
under the age of 40; (2) favorably adjusted the sales bases and
targets of the younger employees and failed to discipline those
same employees for failing to meet even the lowered goals, while
Plaintiff and other employees over the age of 40 were put on action
plans, terminated, transferred, and/or forced to retire for their
alleged deficiencies; and (3) ultimately replaced the older
employees with a new crop of approximately 12 employees, the vast
majority of whom were in their thirties (and, of the two or three
new hires who were over the age of 40, one employee left in less
than six months after being reprimanded by Goebel for "lack of
bringing on new sales").   Goebel's supervisor, Kevin McKean, who
was Plaintiff's second level supervisor, then terminated Plaintiff.
Viewing the evidence in its totality and in the light most
favorable to Plaintiff, Plaintiff has raised a genuine issue of
material fact on whether her age was a motivating factor in her
termination, notwithstanding her serious violation of a company
vehicle policy and poor driving record.   As such, Defendant's

motion for summary judgment on Plaintiff's age discrimination claim
will be denied.

C.   Disability Discrimination

To establish a prima facie case of discrimination under the
ADA, a plaintiff must show: (1) she has a disability; (2) she was
qualified for the job; and (3) an adverse employment decision was
made because of her disability. *See* Talk v. Delta Airlines, Inc.,
165 F.3d 1021, 1024 (5th Cir. 1999) (citing 42 U.S.C. § 12112(a));
*see also* Rodriquez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 474
(5th Cir. 2006); Gonzales v. City of New Braunfels, Tex., 176 F.3d
834, 836 (5th Cir. 1999).  The threshold requirement in Plaintiff's
prima facie case is to show that she suffers from a disability
protected by the ADA.   Talk, 165 F.3d at 1024.  Disability is
defined under the ADA as: (1) a physical or mental impairment that
substantially limits one or more major life activities of an
individual; (2) a record of such an impairment; or (3) being
regarded as having such an impairment. 42 U.S.C. § 12102(2); Dupre
v. Charter Behavioral Health Sys. of Lafayette, Inc., 242 F.3d 610,
613 (5th Cir. 2001).  "[S]ubstantially limit[ed]" means "[u]nable
to perform a major life activity that the average person in the
general population can perform"; or "[s]ignificantly restricted as
to the condition, manner or duration under which an individual can
perform a particular major life activity as compared to the

16

condition, manner, or duration under which the average person in
the general population can perform that same major life activity."
Toyota Motor Mfg., Ky., Inc. v. Williams, 122 S. Ct. 681, 690
(2002) (quoting 29 C.F.R. § 1630.2(j)); *see also* Sutton v. United
Air Lines, Inc., 119 S. Ct. 2139, 2145 (1999).[6]  Relevant factors
in determining whether an impairment substantially limits a major
life activity include: the nature and severity of the impairment,
its duration, and its permanent or long-term impact.  *See* Williams,
122 S. Ct. at 690 (quoting §§ 1630.2(j)(2)(i)-(iii)); *see also*
Talk, 165 F.3d at 1024.  As such, "[t]emporary, non-chronic impair-
ments of short duration, with little or no long term or permanent
impact, are usually not disabilities."  Pryor v. Trane Co., 138
F.3d 1024, 1026 (5th Cir. 1998) (quoting § 1630.2(j)); *see also*
Williams, 122 S. Ct. at 691 ("The impairment's impact must also be
permanent or long term.");  Bennett v. Calabrian Chems. Corp., 324
F. Supp. 2d 815, 827 (E.D. Tex. 2004), *aff'd*, 126 Fed. Appx. 171
(5th Cir. 2005).  A person is substantially limited regarding the
activity of working when she is

> significantly restricted in the ability to perform either
> a class of jobs or a broad range of jobs in various
> classes as compared to the average person having

---

[6] Major life activities are the basic tasks of central
importance to most people's daily lives which average persons can
perform with little or no difficulty, such as "caring for oneself,
performing manual tasks, walking, seeing, hearing, speaking,
breathing, learning, and working."  *See* Talk, 165 F.3d at 1025
(citing 29 C.F.R. § 1630.2(i)).

comparable training, skills and abilities.  The inability
to perform a single, particular job does not constitute
a substantial limitation in the major life activity of
working.

29 C.F.R. § 1630.2(j)(3)(i) (2003); *see also* <u>Sutton</u>, 119 S. Ct. at

2151 (the phrase "substantially limits" means, "at a minimum, that

[a person is] unable to work in a broad class of jobs.").

Plaintiff testified in her deposition that in January, 2004,

she sought medical treatment and was diagnosed with stress and

mental fatigue.  *See* Document No. 35 ex. C at 41, 46; *see also*

Document No. 41 ex. A-1 at 1 (medical record dated January 9, 2004,

stating that Plaintiff has had "A lot of stress lately").[7]  In her

declaration, she averred that she was experiencing "extreme stress"

and anxiety, and related symptoms of "fatigue, insomnia, . . .

vomiting, diarrhea, constipation and rectal bleeding."  *See*

Document No. 41 ex. A ¶¶ 6, 24.  In January, 2004, Plaintiff

applied for and was approved for short-term disability related to

---

[7] Plaintiff in her declaration avers that she suffers from a
"generalized anxiety disorder," and that she first sought treatment
for her "worsening medical problems" in March, 2003.  *See* Document
No. 41 ex. A ¶¶ 6, 24.  Defendant objects that Plaintiff's
declaration, dated nearly four months after her oral deposition
taken in October, 2006, contradicts her sworn testimony.  Plaintiff
testified in her deposition that she has never been diagnosed with
a generalized anxiety disorder or "any [other] type of emotional or
psychiatric or mental health condition," other than a diagnosis of
"stress and mental fatigue" in 2004.  *See* Document No. 35 ex. C at
41, 46, 76.  "It is well settled that this court does not allow a
party to defeat a motion for summary judgment using an affidavit
that impeaches, without explanation, sworn testimony." <u>S.W.S.</u>
<u>Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489, 495 (5th Cir. 1996).

her "severe stress."  Plaintiff testified that although Defendant authorized three months of disability leave, she returned to work in under six weeks because "I felt better and . . . [wanted] to keep my position with the company . . ."  Document No. 35 ex. C at 85.  Plaintiff testified that when she returned to work from medical leave, she was able to work and perform other daily activities without limitation:

> Q.   All right.  And when you came back from your leave at Air Liquide, were you able to function in your job?
>
> A.   Yes.
>
> Q.   When you came back after your leave . . . was there any limit on your ability to work?
>
> A.   No.
>
> Q.   Was there any limit on any of your other daily activities after you came back from your leave at Air Liquide?
>
> A.   No.

See Document No. 35 ex. C at 59.  Plaintiff testified that although stress affected her ability to hike, bike, participate in her daughter's school activities, do housework, help her daughter with schoolwork, and have sex, see id. ex. C at 68-71, 75-76, such activities were affected for only a "couple," a "few," "several," or "one or two" months.  See id.; see also id. at 69-70 (Plaintiff testifying that, to her, "several months" means "[o]ne or two" months).  Plaintiff testified that the physical symptoms of her

19

impairment (including stomach ulcers, hemorrhoids, feeling "run down," an inability to hold down food, and rectal bleeding) lasted only a "few" or "several" months. *See* id. at 53-57. Plaintiff testified that, by the time she returned to work after less than six weeks of medical leave, she "felt better," and she was able to work and perform her other daily activities without limitation. *See* id. at 59, 85. Plaintiff has not sought medical treatment for her stress since the summer of 2004 because "I didn't need [treatment] anymore," and her psychiatrist helped her deal with the stress and "move[ ] on." *See* id. at 30-31, 47-48. Plaintiff stated in her deposition that she is "feeling very, very well now."

Defendant correctly argues that Plaintiff's temporary, short-term stress and anxiety--for which Plaintiff took less than six weeks of medical leave and which has left Plaintiff with no lasting, long-term limitations on her ability to work or conduct any daily activities--is not of sufficient duration or impact to constitute a disability under the ADA. *See, e.g.,* Williams, 122 S. Ct. at 691 ("The impairment's impact must also be permanent or long term."); Pryor, 138 F.3d at 1026 ("Temporary, non-chronic impair-ments of short duration, with little or no longer term or permanent impact, are usually not disabilities."); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996) (same); Sanders v. Arneson Prods., Inc., 91 F.3d 1351, 1354 (9th Cir. 1996) (holding that a plaintiff's depression and corresponding three and

a half month medical leave was not of sufficient duration to
constitute a disability under the ADA); Morgan v. Masterfoods USA,
Inc., No. 2:04-CV-907, 2006 WL 3331780, at *5-6, *8 (S.D. Ohio
Nov. 14, 2006) (holding that a plaintiff with "significant bouts of
depression," who had received approximately 18 electroshock
treatments and took periodic leaves from work, including a four-
month medical leave, was only temporarily impaired in his ability
to care for himself, to work, to sleep, and to relate to others and
thus was not substantially limited in these areas so as to
constitute a disability under the ADA; "[t]he longest absence was
plaintiff's leave for approximately four months in 2003 and 2004;
absences for even longer periods have not been found to be evidence
of a substantial limitation.") (citing Colwell v. Suffolk County
Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998) ("[A] seven-month
impairment of [plaintiff's] ability to work . . . is of too short
a duration and too vague an extent to be 'substantially
limiting.'")).  Moreover, Plaintiff has presented no summary
judgment evidence of any substantially restricted major life
activity--either in terms of work or otherwise.[8]  Viewing the
evidence in the light most favorable to Plaintiff, Plaintiff has

---

[8] It is uncontroverted that after her termination, Plaintiff
worked as a specialty gas office manager and an inside sales
associate.  Document No. 35 ex. C at 208-09.  She is currently
employed as a full-time Administrative Support Specialist at L&M
Technologies and a part-time Sales Specialist at Home Depot.  *See*
id. at 213.

failed to raise so much as a genuine issue of material fact that her temporary, stress-related impairment, which has left no lasting or long-term restrictions on any major life activity, rises to the level of a disability within the meaning of the ADA.

Likewise, there is no summary judgment evidence to raise a genuine issue of material fact that Defendant ever regarded Plaintiff as disabled within the meaning of the ADA, or that Defendant regarded her as substantially limited in her ability to perform a broad class of jobs or to work in general due to a disability.  Moreover, there is no summary judgment evidence to raise a fact issue that Plaintiff has a record of impairment that substantially limits a major life activity.

Because Plaintiff has failed to raise a genuine issue of material fact that she suffered from a "substantially limiting" physical or mental impairment, that a record of such an impairment exists, or that Defendant regarded her as having such an impairment, Defendant is entitled to summary judgment on Plaintiff's ADA claim.

D.   <u>Retaliation</u>

Viewed in the light most favorable to Plaintiff, there is summary judgment evidence that Plaintiff filed an EEOC charge of discrimination (which she twice amended) that charged Goebel and Defendant with discriminatory and retaliatory treatment against

Plaintiff; that Goebel and Defendant knew about Plaintiff's complaints; that Defendant subsequently took certain actions that a reasonable employee would have found materially adverse, such as the reassignments of Plaintiff's prime sales accounts and sales territories, and ultimately terminating her; and that such adverse actions occurred in close temporal proximity to Plaintiff's complaints. This evidence, viewed in its totality and in the light most favorable to Plaintiff, raises an issue of material fact on whether Defendant retaliated against Plaintiff for her complaints of discrimination. *See* Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006). Summary judgment will therefore be denied on the retaliation claim.

E.   Equal Pay Act

Plaintiff contends that Defendant paid her less than three comparably situated male account managers: Roy Thibodeaux ("Thibodeaux"), Dan Fordyce (Fordyce"), and Mitchell Haddock ("Haddock").[9]  Under the Equal Pay Act, an employer is prohibited

---

[9] Plaintiff in her deposition or interrogatory answers also contended that Bob Guidotti ("Guidotti") and Allen Cawley ("Cawley") were paid more than she was paid.  Defendant has moved for summary judgment as to these putative comparators on grounds that: (1) Plaintiff's claims are time-barred, as Guidotti and Cawley left Defendant's employ more than two years before Plaintiff filed suit; and (2) they are not proper comparators because they sold different products, worked in different areas, and reported to different supervisors than Plaintiff.  Plaintiff offers no defense of her unequal pay claims pertaining to Guidotti or Cawley, and these undefended claims may be regarded as abandoned.  *See, e.g.,*

23

from sex-based discrimination where the jobs require equal skill, effort, and responsibility and are performed under similar conditions. 29 U.S.C. § 206(d)(1). "In short, it demands that equal wages reward equal work." Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio, 261 F.3d 542, 546 (5th Cir. 2001). To establish a prima facie case under the EPA, a plaintiff must show that: (1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison. Chance v. Rice Univ., 984 F.2d 151, 153 (5th Cir. 1993). Once the plaintiff establishes her prima facie case, the burden shifts to the employer to "prove by a preponderance of the evidence that the wage differential is justified under one of the four affirmative defenses set forth in the EPA: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) [a differential based on] any other factor [other] than sex." Siler-Khodr, 261 F.3d at 546.

Defendant contends that Plaintiff has not established a prima facie case principally because there is no evidence that she was paid less than any of her comparators. The uncontroverted summary judgment evidence is that Plaintiff received gross pay of

---

Scales v. Slater, 181 F.3d 703, 708 n. 5 (5th Cir. 1999); Thompson v. Exxon Mobil Corp., 344 F. Supp. 2d 971, 976 (E.D. Tex. 2004).

$73,558.35 in 2003, while Thibodeaux was paid only $67,778.98.  *See* Document No. 35 ex. Y-4; ex. Y ¶ 8.  There is no summary judgment evidence that Fordyce was paid more than Plaintiff.  Haddock--who was in the same department as Plaintiff and sold the same product-- earned base pay of $57,475.33 in 2003, while Plaintiff, who was also in a higher salary grade than Haddock, was paid $59,565.00 in base pay.  *See* id. ex. Y-3; ex. Y ¶ 8.  There is no summary judgment evidence that Plaintiff was paid less than any of her comparators, as required for a prima facie case.[10]  Accordingly, Defendant is entitled to summary judgment on Plaintiff's EPA claim.

### IV.   Order

    For the foregoing reasons, it is

    ORDERED that Defendant Air Liquide America, L.P.'s Motion for Complete Summary Judgment (Document No. 35) is GRANTED IN PART as follows:  Plaintiff Monica Burns's ADA disability discrimination claim and Equal Pay Act claim are both DISMISSED on the merits; and

---

    [10] Moreover, Defendant correctly argues that Plaintiff fails to present evidence that she performed work in a position requiring equal skill, effort, and responsibility as Thibodeaux and Fordyce, who, according to the uncontroverted summary judgment evidence, sold a different product, worked in a different division, reported to a different supervisor, and "didn't do the same job" as Plaintiff.  *See* Document No. 35 ex. C at 178-79; ex. Y ¶ 10.

the motion is otherwise DENIED.   Remaining for trial are Plain-

tiff's age discrimination and retaliation claims.

The Clerk will enter this Order and send a copy to all counsel

of record.

SIGNED at Houston, Texas on this  __22nd__  day of May, 2007.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE